1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IRVING D. ROUSSELL,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

Defendant.

NO.  C12-970-JLR-JPD

REPORT AND
RECOMMENDATION

Plaintiff Irving D. Roussell appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied his applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

the Commissioner's decision be reversed and remanded for further proceedings.

## I.    FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty year-old man with a high

school education.  Administrative Record ("AR") at 34.  He has no past relevant work, but has

worked short stints as a housekeeper, janitor and general work at a racetrack.  AR at 58-59.

Plaintiff was last employed in the spring of 2009.  AR at 37.

REPORT AND RECOMMENDATION - 1

1    On April 28, 2010, plaintiff filed a claim for SSI payments and DIB benefits, alleging

2  an onset date of April 1, 2009.  AR at 14.  Plaintiff asserts that he is disabled due to an

3  affective disorder (probably bipolar), borderline intellectual functioning, post-traumatic stress

4  disorder ("PTSD"), and polysubstance abuse in reported remission.  AR at 16.

5    The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 14.

6  Plaintiff requested a hearing which took place on February 1, 2011.  AR at 30-65.  On

7  February 17, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits

8  based on his finding that plaintiff could perform a specific job existing in significant numbers

9  in the national economy.  AR at 14-24.  Plaintiff's administrative appeal of the ALJ's decision

10  was denied by the Appeals Council, AR at 1-3, making the ALJ's ruling the "final decision" of

11  the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff timely filed the

12  present action challenging the Commissioner's decision.  Dkt. No. 1.

13                              II.    JURISDICTION

14    Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§

15  405(g) and 1383(c)(3).

16                          III.    STANDARD OF REVIEW

17    Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

18  social security benefits when the ALJ's findings are based on legal error or not supported by

19  substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th

20  Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

21  such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

22  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

23  (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

24  medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*,

REPORT AND RECOMMENDATION - 2

53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Roussell bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)  (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On February 17, 2011, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social
Security Act through March 31, 2011.

2.    The claimant has not engaged in substantial gainful activity since
April 1, 2009, the alleged onset date.

3.    The claimant has the following severe impairments: an affective
disorder (probably bipolar); borderline intellectual functioning (BIF);
post-traumatic stress disorder (PTSD); and polysubstance abuse in
reported remission.

4.    The claimant does not have an impairment or combination of
impairments that meets or medically equals one of the listed
impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds
that the claimant has the residual functional capacity to perform a full
range of work at all exertional levels.  He has the mental capability to
adequately perform the mental activities generally required by
competitive, remunerative work as follows: he can understand,
remember and carry out simple 1 to 2 step instructions required of jobs
classified at a level of SVP 1 and 2, unskilled work.  He has the
average ability to perform sustained work activities (i.e., he can
maintain attention and concentration; persistence and pace) in an
ordinary work setting on a regular and continuing basis (i.e., 8 hours
per day, for 5 days a week, or an equivalent work schedule) within
customary tolerances of employers rules regarding sick leave and
absence. He can make judgments on simple work-related decisions
and can respond appropriately to supervision and co-workers, and deal
with changes all within a stable work environment.  He should work in

positions not dealing with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process.  Incidental contact with the general public is not precluded.

6.      The claimant has not past relevant work.

7.      The claimant was born on XXXXX, 1960 and was 48 years old on the alleged disability onset date, which is defined as a younger individual age 18-49.  XXXXX, 2010, he reached age 50, a person approaching advanced age.[2]

8.      The claimant has at least a high school education and is able to communicate in English.

9.      Transferability of job skills is not an issue because the claimant does not have past relevant work.

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2009, through the date of this decision.

AR at 16-24.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.      Whether the ALJ properly rejected the opinion Phyllis Sanchez, PhD?

2.      Whether the ALJ properly rejected the opinions of Dr. Carla Hellekson, MD?

3.      Whether the ALJ properly rejected the opinion of Mr. Roussell's ARNP, Laura Clark?

4.      Whether the ALJ properly rejected the opinions of the reviewing doctors?

5.      Whether the ALJ properly excluded limitations arising from Mr. Roussell's substance use?

6.      Whether the ALJ properly accounted for limitations relating to Mr. Roussell's difficulties in concentration, persistence and pace.

7.      Whether the ALJ properly assessed Mr. Roussell's credibility?

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1  Dkt. No. 11 at 2.

2  <center>VII.   DISCUSSION</center>

3      A.    <u>The ALJ Erred in His Assessment of the Medical Evidence</u>

4          *1.    Standards for Reviewing Medical Evidence*

5        As a matter of law, more weight is given to a treating physician's opinion than to that

6  of a non-treating physician because a treating physician "is employed to cure and has a greater

7  opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

8  747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating

9  physician's opinion, however, is not necessarily conclusive as to either a physical condition or

10 the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

11 *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining

12 physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

13 contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*,

14 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough

15 summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

16 making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

17 merely state his/her conclusions. "He must set forth his own interpretations and explain why

18 they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22

19 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence.

20 *Reddick*, 157 F.3d at 725.

21       The opinions of examining physicians are to be given more weight than non-examining

22 physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

23 uncontradicted opinions of examining physicians may not be rejected without clear and

24 convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

REPORT AND RECOMMENDATION - 7

1    physician only by providing specific and legitimate reasons that are supported by the record.

2    *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

3        Opinions from non-examining medical sources are to be given less weight than treating

4    or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the

5    opinions from such sources and may not simply ignore them.  In other words, an ALJ must

6    evaluate the opinion of a non-examining source and explain the weight given to it.  Social

7    Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives

8    more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a

9    non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

10   consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947,

11   957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

12       Plaintiff argues that the ALJ erred in his assessment of the medical opinions of Phyllis

13   Sanchez, Ph.D., David Mashburn, Ph.D , Carla Hellekson, M.D., Kent Reade, Ph.D. and Laura

14   Clark, ARNP.

15           *2.    Dr. Sanchez*

16       Dr. Sanchez evaluated plaintiff in May 2009 for the Washington State Department of

17   Health and Social Services ("DSHS").  AR at 329-35.  Dr. Sanchez diagnosed alcohol

18   dependence, PTSD, and cocaine abuse.  AR at 330.  She opined that plaintiff had marked

19   limitations in areas of depressed mood and social withdrawal.  She found moderate limitations

20   in areas of anxiety, expressions of anger, motor agitation and motor retardation.  She found

21   mild limitations in areas of suicidal ideation and paranoid behavior.  *Id.*  In terms of his

22   functional limitations, she opined that plaintiff had marked limitations in his cognitive abilities

23   to perform routine tasks and moderate limitations in his ability to perform routine tasks.  As to

24   social factors, she found moderate limitations in his ability to relate to co-workers and

REPORT AND RECOMMENDATION - 8

supervisors due to anger issues, his ability to interact appropriately in public contacts, his ability to care for himself, and his ability to maintain appropriate behavior. She found marked limitations in his ability to tolerate the pressures and expectations of a normal work setting. AR at 331. She also opined that plaintiff was chronically mentally ill, and that drugs and alcohol had a significant effect on his abilities. AR at 332.

The ALJ concluded that the "assessment is given a fair amount of weight, and supports a finding that the claimant is capable of sustaining work at simple, routine tasks in a stable work environment." AR at 19. In his RFC assessment, the ALJ found plaintiff capable of being able to perform simple, unskilled work, respond appropriately to supervision and co-workers and have incidental contact with the public. The ALJ does not indicate what a "fair amount of weight" means, or what portion, if any, of Dr. Sanchez's evaluation he disagrees with.

The ALJ asked the Vocational Expert ("VE") if plaintiff could perform jobs in the national economy if he had markedly below average ability to perform sustained work activities. AR at 61. The VE testified that there would be no such jobs. *Id.* Yet, Dr. Sanchez found plaintiff had marked limitations in his ability to tolerate the pressures and expectations of a normal work setting. AR at 331. Based on the ALJ's opinion, it is not self-evident as to whether by giving "fair weight" (whatever that means), the ALJ intentionally rejected Dr. Sanchez's opinion in this area, or whether the ALJ overlooked it. If the former, no reasons were provided; if the latter, then the ALJ failed to provide "specific and legitimate reasons" to reject it.

### 3.    Dr. Mashburn

On July 30, 2010, Dr. Mashburn evaluated plaintiff. AR at 342-46. As part of his evaluation, Dr. Mashburn administered the Wechsler Adult Intelligence Scale-III test, which

revealed borderline intellectual functioning, a verbal-scale IQ of 77, a performance scale IQ of 72 and a full-scale IQ score of 72.  AR at 345.  Dr. Mashburn opined that plaintiff had significant PTSD symptoms and borderline range of intelligence.  *Id.*  He concluded that plaintiff's borderline intellectual level "allows him to understand basic information, follow simple commands, and generally take care of himself in an adequate way.  Complex tasks of an intellectual level certainly would be difficult."  AR at 346.

The ALJ noted the results of the evaluation and test result, and concluded that "[h]e did not specifically note the claimant's functional limitations, but the clinical testing and presentation suggest some cognitive and social difficulty.  This report is the best evidence for an objective opinion that the claimant has improved since he stopped his alcohol and drug abuse."  AR at 20.  The ALJ did not otherwise indicate how much weight, if any, he accorded to Dr. Mashburn's opinions.  More importantly, however, in his evaluation, Dr. Mashburn also wrote "Regarding relationships, his PTSD may not be controlled enough at this point for his emotional stability to be kept in check when in relationships with employers and fellow employees."  AR at 346.  The ALJ ignored this portion of Dr. Mashburn's report.  As noted, the ALJ did not indicate whether he credited the opinion at all, other than the portion that noted plaintiff's improvement when stopping use of alcohol and drugs.  This Court is once again left to speculate whether the ALJ decided to give this portion of the opinion no weight or "fair weight" or whether the ALJ simply overlooked that portion of the opinion.  In any event, there is no basis to conclude that the ALJ provided specific and legitimate reasons to reject that portion of Dr. Mashburn's opinion that stated that plaintiff's PTSD might not be controlled enough to be kept in check while working.  This tracks remarkably closely to the limitations found by Dr. Sanchez and not discussed by the ALJ.

1     4. *Dr. Hellekson*

2    Dr. Hellekson evaluated plaintiff on two separate occasions; one occurring in October

3 2009 (AR at 336-41), and the other in August 2010 (AR at 440-60).  In her 2009 report, she

4 opined that plaintiff had severe functional limitations attributable to depression, PTSD,

5 flashback and easy startle.  She found marked functional limitations attributable to trust issues,

6 low self-esteem and tearfulness and non-specific suicidal ideation.  AR at 337.  She also

7 diagnosed a Global Assessment of Functioning ("GAF")[3] score of 31.  AR at 338.  She found

8 severe limitations in his abilities to exercise judgment and make decisions, perform routine

9 tasks, relate appropriately to co-workers and supervisors, interact appropriately in public

10 contacts, respond appropriately to and tolerate pressures and expectations of a normal work

11 setting, care for himself, and to maintain appropriate behavior in a work setting.  AR at 339.

12 She rated him as Seriously Disturbed.  AR at 340.

13    The ALJ largely rejected the opinions of Dr. Hellekson, stating:

14    This report is considered, but Dr. Hellekson did not provide any examination
     notes, specific mental status reports, or other support for her report.  She had Dr.

15    Sanchez's report to assist her, but apparently put more reliance on the
     claimant's subjective statements.  The claimant's statements are not entirely

16    credible, and Dr. Hellekson's assessment is not given much weight.  She noted

17     [3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the

18 clinician's judgment of the individual's overall level of functioning."  AMERICAN PSYCHIATRIC
 ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000).

19 A GAF score falls within a particular 10-point range if either the symptom severity or the level
 of functioning falls within the range.  *Id.* at 32.  For example, a GAF score of 51-60 indicates

20 "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty
 in social or occupational functioning."  *Id.* at 34.  A GAF score of 41-50 indicates "[s]erious

21 symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment
 in social, occupational, or school functioning," such as the lack of friends and/or the inability

22 to keep a job.  *Id.*  A GAF score of 31-40 indicates "some impairment in reality testing and
 communication" or "major impairment in several areas, such as work or school, family

23 relations, judgment, thinking or mood."  A GAF score of 21-30 indicates "behavior is
 considerably influenced by delusions or hallucinations" or "serious impairment in

24 communications or judgment" or "inability to function in all areas."  *Id.*

that he would improve with sustained remission from substance abuse, however, which appears to be the case here.

AR at 20.

When Dr. Hellekson evaluated plaintiff nearly a year later, she came to much the same conclusion.  She found severe functional limitations attributable to depression, anxiety, nightmares, and PTSD.  She found marked functional limitations attributable to worry about the future, hopelessness, and non-specific suicidal ideation, and mild limitations due to commitment to staying clean and sober.  AR at 441.  She assessed a GAF score of 41.  AR at 442.  She assessed marked limitations in the areas of ability to learn new tasks, to relate appropriately to co-workers and supervisors, act appropriately in public contacts, tolerate the pressures and expectations of a normal work setting and ability to maintain appropriate behavior in a work setting.  AR at 443.

The ALJ again largely rejected the report:

> Again, the basis for Dr. Hellekson's opinion is not apparent from her report. She noted that he had a depressed mood, mild psychomotor retardation, and non-specific suicidal ideation.  But his thought processes and content were well-organized and coherent with no psychotic ideation.  He had some problem with memory, however (exhibit 24F:14).  That assessment is not given great weight because it is so inconsistent with the consultative examining reports.

AR at 20.

The ALJ erred in his treatment of Dr. Hellekson's reports.  He casually dismissed the findings, because, according to the ALJ, there were no specific reports or test results provided. Accordingly, this led the ALJ to conclude that Dr. Hellekson must have been unduly swayed by plaintiff's self-reports.  This casual dismissal ignores the fact that as to the symptoms opined of, Dr. Hellekson was careful to distinguish between those that she actually observed during her evaluation (e.g. depression, low self-esteem and tearfulness, trust issues, anxiety PTSD, worry about the future) and those that she did not actually observe.  AR at 337, 443.

REPORT AND RECOMMENDATION - 12

1   She obviously performed some tests to validate her findings.  *See also* AR at 339 ("on standard

2   cognitive exam, impairments on recent recall: 2/3 objects in 5 min; concrete judgment, and

3   PTSD symptoms impair his ADL") and 443 ("Two part command OK, Four part command

4   OK, Recalls 1/3 objects in 5 minutes").

5          The ALJ failed to discuss the respective GAF scores assessed by Dr. Hellekson, both of

6   which are probative of profound impairments.  The ALJ also failed to provide specific and

7   legitimate reasons to reject the opinions of an examining physician.

8                        *5.    Dr. Reade*

9          Dr. Reade prepared a Mental Residual Functional Capacity Assessment regarding

10  plaintiff to which the ALJ gave "great weight."  AR at 361-64, 21.  The ALJ interpreted Dr.

11  Reade's report as limiting plaintiff to "limited contact with co-workers and the general public."

12  AR at 21.  He incorporated this into his RFC by limiting plaintiff to:

13         He can make judgments on simple work-related decisions and can respond
           appropriately to supervision and co-workers, and deal with changes all within a
14         stable work environment.  He should work in positions not dealing with the
           general public as in a sales position or where the general public is frequently
15         encountered as an essential element of the work process.  Incidental contact
           with the general public is not precluded.
16
    AR at 18.  Dr. Reade's report states that plaintiff "would work best in a setting that did not

17  require him to have relationships with employers and fellow employees."  He also indicated

18  that "claimant should have limited contact with co-workers and the general public."  AR at

19  363.  The RFC assessed by the ALJ does not include restrictions on dealings with co-workers

20  as set forth in Dr. Reade's report, to which the ALJ attached great weight.  Because this matter

21  is being remanded for further proceedings to assess the medical information properly, if the

22  ALJ intends to rely upon Dr. Reade's report, he should also address restrictions on co-workers

23  recommended by Dr. Reade.

24

REPORT AND RECOMMENDATION - 13

1

     6.  *Laura Clark, ARNP*

2

   Plaintiff argues that the ALJ erred regarding the treatment afforded to the assessments

3

of Nurse Clark.  In January 2011, Nurse Clark, who had been plaintiff's medication

4

management professional for the prior 6 months, submitted an assessment (AR at 448-580 that

5

included a narrative, stating in part:

6

   Given that Mr. Roussell also has a history of cocaine dependence, of which he
   has succeeded in remaining abstinent for 18 months, it would be detrimental to

7

   his psychiatric stability for him to work.  Mr. Roussell is incapable of
   maintaining a rigid schedule, as he continues to have insomnia and is at this

8

   time homeless.  He requires his energies to be placed in meeting his most basic
   needs of nutrition and shelter.  Interacting with people and maintaining

9

   productivity standards in a job could place a great amount of stress on an
   individual who is at risk for relapse and already has a high level of anxiety and

10

   irritability.  Too rapid an entry into the workforce could cause him to
   decompensate at this time.

11

AR at 458. The ALJ noted that her report is "consistent with listing-level functional deficits

12

and disability, and it is given substantial consideration.  However, it does not merit much

13

weight, because it is inconsistent with the reports of examining sources and with the office

14

notes at the Indian Health Board."  AR at 21.

15

   In order to determine whether a claimant is disabled, an ALJ may consider lay-witness

16

sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well

17

as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. §

18

404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects

19

his/her ability to work is competent evidence, and cannot be disregarded without comment.

20

*Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  This is particularly true for such non-

21

acceptable medical sources as nurses and medical assistants.  *See* Social Security Ruling ("SSR")

22

06-03p (noting that because such persons "have increasingly assumed a greater percentage of the

23

treatment and evaluation functions previously handled primarily by physicians and

24

REPORT AND RECOMMENDATION - 14

psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Because this matter is being remanded for further review of the medical evidence, the ALJ should also review the reports of Nurse Clark. It is not self-evident that her analysis is inconsistent with the medical records as a whole, and if this is the basis for rejection, the ALJ should be careful not to "cherry-pick" from the reports that supports the conclusion while ignoring those that do not. *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001).

B.      Remaining Issues

Because this matter is being remanded for a further comprehensive review of the medical evidence, it is unnecessary to address in any detail the remaining assignments of error. The medical evidence review may, for example, substantially impact the assessment of plaintiff's credibility, as much basis for the conclusion reached by the ALJ is based on the ALJ's assessment of the medical opinions at issue. In addition, this further review will also address the issues regarding alleged errors made in the RFC analysis.

However, there is one remaining issue that should be at least partially addressed. Plaintiff argues that the ALJ essentially ignored the process for dealing with Drug and Alcohol Abuse ("DAA") cases. Pursuant to the Contract with America Advancement Act, an "individual shall not be considered to be disabled for purposes of [Title II and Title XVI benefits] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, 110 Stat. 847 (March 19, 1996) (codified at 42 U.S.C. 423(d)(2)(C), 1382c((a)(3)(J)). Before applying this statute, however, an ALJ must first conduct the five-

REPORT AND RECOMMENDATION - 15

1    step sequential-evaluation process and conclude that the claimant is disabled. *Bustamante v.*

2    *Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). If a claimant is found to be disabled and there

3    is medical evidence of plaintiff's DAA use, then the ALJ must apply the sequential-evaluation

4    process a second time to determine whether plaintiff would still be disabled if he or she

5    stopped using drugs and alcohol. *Id*. It is error for an ALJ to conclude that DAA precludes an

6    award of benefits prior to applying the five-step process first. *Id*

7            Plaintiff argues that the ALJ erred by not conducting the *Bustamante*-required two step

8    analysis. This two step analysis is required if the plaintiff is found to be disabled at the end of

9    the 5 step sequential disability evaluation process. It is not required if the ALJ find that with

10   all of plaintiff's impairments, including all of those which exist or are exacerbated by the

11   impact of occasional or frequent alcohol or drugs, the plaintiff is not disabled at Step 5.

12   However, to reach this conclusion and avoid the *Bustamanante*-required two step analysis, the

13   ALJ has to accept all of plaintiff's impairments as they exist including those that exist with use

14   of alcohol and drugs, and conclude that with all of these impairments, the plaintiff is still not

15   disabled. This finding is not satisfied by indications that if plaintiff stopped using drugs or

16   alcohol, he would not be disabled. If this is the conclusion, then *Bustamante* applies.

17          Because this matter is being remanded for further consideration, the ALJ should take

18   into account if the two-step *Bustamante* analysis is required, in light of the discussion above.

19   //

20   //

21   //

22   //

23   //

24   //

REPORT AND RECOMMENDATION - 16

1

VIII.   CONCLUSION

2
      For the foregoing reasons, the Court recommends that this case be REVERSED and

3
REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4
instructions.  A proposed order accompanies this Report and Recommendation.

5
      DATED this 31st day of January, 2013.

6

7
                              JAMES P. DONOHUE

8
                              United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 17